IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KATHERINE STRAUCH SULLIVAN, an individual residing at 11105 Old Carriage Rd, Glen Arm, MD 21057; and DAVID MORSBERGER, an individual residing at 1241 Village Lake Dr, Davidsonville, MD 20135,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL G. SUMMERS, in his official capacity as the Chairman of the Maryland State Board of Elections, 151 West Street, Suite 200, Annapolis, Anne Arundel County, Maryland; WILLIAM G. VOELP, in his official capacity as the Vice Chairman of the Maryland State Board of Elections, 151 West Street, Suite 200, Annapolis, Anne Arundel County, Maryland; JANET MILLENSON, in her official capacity as a member of the Maryland State Board of Elections, 151 West Street, Suite 200, Annapolis, Anne Arundel County, Maryland; YAAKOV WEISSMANN, in his official capacity as a member of the Maryland State Board of Elections, 151 West Street, Suite 200, Annapolis, Anne Arundel County, Maryland; and JARED DEMARINIS, in his official capacity as the Maryland State Administrator of Elections, 151 West Street, Suite 200, Annapolis, Anne Arundel County, Maryland,<br><br>Defendants. | No. _____<br><br><br><br><br><br>**COMPLAINT** |

Pursuant to Fed. R. Civ. P. 8, Plaintiffs Katherine Strauch Sullivan and David Morsberger, by and through undersigned counsel, state and allege as follows:

**INTRODUCTION**

1.     Citizen engagement in the democratic processes has been the cornerstone of the American political experiment since its founding. That engagement, of course, manifests itself in voting. But it extends far beyond that. Citizens also volunteer their time as poll workers and election observers. And, as Plaintiffs do, they use their spare time, scarce resources, and statutory rights to assess the extent to which taxpayer-funded officials are fulfilling their duties to administer free, fair, and efficient elections.

2.     In particular, Plaintiffs are citizens concerned that Maryland election officials have placed the integrity of the state's elections at risk by failing to fulfil their obligations under state and federal law to maintain accurate and up-to-date voter registration records.

3.     Their concerns are well-founded. In an October 2023 report, the Maryland General Assembly's Office of Legislative Audits found numerous deficiencies and vulnerabilities in the list maintenance practices of the Maryland State Board of Elections (SBE), including 2,426 apparent instances in which a deceased individual was associated with an active voter registration, and up to 327 potentially duplicative voter registrations. More broadly, the report concluded that the SBE had failed to consistently refer apparent incidents of unlawful voting activities to prosecutorial authorities, take a comprehensive approach to identifying deceased or duplicate voters, and adequately ensure that local boards of election regularly correct errors in voter registration records.  *See* Office of Legislative Audits, *Audit Report: State Board of Elections* (Oct. 2023),  *available at*  https://www.marylandmatters.org/wp-content/uploads/2024/11/SBE23.pdf (last accessed Dec. 27, 2023).

4.     Plaintiffs seek to address their concerns by working to identify inaccuracies in the state's voter registration records. They first request, and until recently regularly have received,

2

registration and other official records to which they are entitled under federal and state law. They then canvass Maryland neighborhoods door-to-door to try to verify the accuracy of information in those records, including the validity of addresses, residency representations, and voter histories.

5. In doing this work, Plaintiffs have never been found to have violated any law, state or federal, civil or criminal.

6. Plaintiffs' door-to-door efforts have deep roots in the American tradition. They are protected by the First Amendment of the Constitution. *See e.g.*, *Watchtower Bible & Tract Soc. of NY, Inc. v. Village of Stratton*, 536 U.S. 150, 160-61 & n.10 (2002) (describing the tradition and collecting cases). And they are protected by both federal and state law.

7. As for federal law, the National Voter Registration Act of 1993, 52 U.S.C. § 20501, *et seq.* ("NVRA"), expressly aims to "protect the integrity of the electoral process" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). In furtherance of this purpose, Congress afforded citizens a privately enforceable right to access "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," 52 U.S.C. § 20507(i)(1), subject to narrow exceptions not relevant here.

8. Congress granted citizens access to these records to, among other reasons, ensure that people could evaluate for themselves whether election officials are fulfilling the NVRA's important mandates. And Congress's choice has been repeatedly vindicated over the years, as private citizens and organizations around the country have used the information obtained through the NVRA to establish, in court, numerous instances of states and localities failing to fulfill their statutory obligation under the NVRA. As a result of such lawsuits, courts have found and remedied failures to properly maintain their registration rolls and to remove from them persons no longer

eligible to vote, unlawful registration cancellations, and failures to properly offer voter registration opportunities at DMVs and other designated agencies.

9. As for state law, Maryland Election Law allows Plaintiffs to use the voter registration records to which they are entitled under the NVRA for purposes "related to the electoral process." Maryland Election Law § 3-506(a)(1)(ii).

10. In violation of these constitutional and statutory rights, the SBE has sought to shut down Plaintiffs' citizen advocacy work and oversight of its operations. It has done this by adopting a regulation that categorically prohibits the use of voter registration records for "investigations," a term it defines to consist of or include "contact[ing] an individual voter as part of an investigation into an illegal or suspected illegal infraction or violation involving the voter's behavior in a specific election." And to implement this regulation, the SBE further requires requestors of voter lists, as a condition of receiving the information to which they are entitled by law, to execute a sworn affidavit agreeing that they will not use the information to conduct any such investigations. Code of Md. Regulations ("COMAR") 33.03.02.01(B)(1)(c), 33.03.02.04(A) (collectively, hereafter, the "Use Restriction").

11. The Use Restriction is invalid and its enforcement must be enjoined for three independent reasons.

12. First, the Use Restriction obstructs Congress's objective of allowing citizens to use voter registration records to investigate and verify their accuracy and currency. Accordingly, it is preempted by the NVRA.

13. Second, by apparently prohibiting the use of voter lists only for certain types of "investigations" based on a canvasser's message or public policy objective, the Use Restriction

4

discriminates on the basis of viewpoint in violation of the First and Fourteenth Amendments, and is not justified by any countervailing state interests. Accordingly, it is unconstitutional.

14. Finally, the SBE is not statutorily empowered to adopt the Use Restriction, and, even if it were, the Use Restriction is inconsistent with Maryland Election Law § 3-506(a)(1)(ii), which allows Plaintiffs to use voter registration records for investigations that are "related to the electoral process." Accordingly, it is contrary to state law.

## JURISDICTION & VENUE

15. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' claims under the NVRA and the First and Fourteenth Amendments of the United States Constitution because those claims arise under the Constitution or laws of the United States. In addition, the Court has subject matter jurisdiction over Plaintiffs' claim under the NVRA pursuant to 52 U.S.C. § 20510(b).

16. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiffs' claims that are predicated on Maryland state law because those claims are so related to Plaintiffs' claims arising out of federal law that they form part of the same case or controversy.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because the Defendants all reside in the State of Maryland and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Maryland.

18. The Northern Division is the appropriate forum for this action pursuant to Local Rule 501(4)(a)(ii) because the non-governmental parties reside in that division.

## PARTIES

19. Plaintiff Katherine Strauch Sullivan is an individual, and a resident and registered voter of the State of Maryland.

20. Plaintiff David Morsberger is an individual, and a resident and registered voter of the State of Maryland.

21. The Maryland State Board of Elections is an agency of the State of Maryland, and is required by law to "manage and supervise elections in the State and ensure compliance with the requirements of . . . any applicable federal law by all persons involved in the elections process." Md. Election Law § 2-102(a).

22. Defendant Michael G. Summers is the Chairman of the SBE and is named in this action in his official capacity only.

23. Defendant William G. Voelp is the Vice Chairman of the SBE and is named in this action in his official capacity only.

24. Defendant Janet Millenson is a member of the SBE and is named in this action in her official capacity only.

25. Defendant Yaakov Weissmann is a member of the SBE and is named in this action in his official capacity only.

26. Defendant Jared DeMarinis is the Maryland State Administrator of Elections and is named in this action in his official capacity only. The State Administrator is "the chief State election official" of the State of Maryland and has been designated by state law as the "chief State election official … responsible for coordination of State responsibilities under" the NVRA. *See* Md. Election Law § 2-103(b)(8); 52 U.S.C. § 20509.

**FACTUAL ALLEGATIONS**

27. Maryland law allows any person to obtain a copy of the list of registered voters from either the SBE or their local board of elections. *See* Md. Election Law § 3-506.[1]

28. As a condition of accessing the voter list, a requestor must provide "a statement, signed under oath, that the list is not intended to be used for: 1. Commercial solicitation; or 2. Any other purpose not related to the electoral process." Md. Election Law § 3-506(a)(1)(ii).

29. Any person "who knowingly allows a list of registered voters, under the person's control, to be used for any purpose not related to the electoral process is guilty of a misdemeanor." *Id.* § 3-506(c).

30. Maryland regulations require requesters to complete and submit a form as a condition precedent to obtaining a voter list. The regulation prescribes a pre-printed affidavit that is substantially in the following form:

> Under the penalties of perjury, I declare that no part of any list requested by this application is intended to be used for commercial solicitation or for any other purpose that is not related to the electoral process.
>
> I am aware that if I or any other person who has a registration list under his or her control knowingly allows any part of that list to be used for commercial solicitation or for any other purpose that is not related to the electoral process, that individual is guilty of a misdemeanor and, on conviction, subject to imprisonment for not less than 30 days or more than 6 months, to a fine of up to $250, or to both imprisonment and fine.

COMAR 33.03.02.04(A).

31. The SBE is empowered by statute to adopt regulations governing certain enumerated facets of the list disclosure process, specifically: (a) the time in which a list must be

---

[1] Although the statute purports to limit access only to Maryland registered voters, this Court previously found that limitation preempted by the NVRA. *See Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019).

7

provided, (b) required authorizations that must precede issuance of a list, (c) fees to be paid by requestors, (d) the types of information to be included on a list, (e) restrictions on the release of certain registrants' residential addresses, (f) the format of information included in a list, and (g) the medium or media on which list information is provided.  *See id.* § 3-506(a)(2).

32. On or around June 20, 2023, the SBE adopted the Use Restriction, which amends COMAR 33.03.02.01(B)(1) and purports to define the term "electoral process" as follows:

> (a) "Electoral process" means the system established by the Maryland Constitution, Election Law Article, Annotated Code of Maryland, and regulations of the State Board, by which a person is elected to a public office or by which voters express a preference on a ballot question.
>
> (b) "Electoral process" includes, but is not limited to registering voters, forming political parties, qualifying as a candidate for public office, petitioning candidates or questions to the ballot, drafting and publishing ballot questions, conducting elections, casting ballots, canvassing ballots, recounting an election, and financing a campaign.
>
> (c) "Electoral process" does not include investigations. The use of a voter registration list to contact an individual voter as part of an investigation into an illegal or suspected illegal infraction or violation involving the voter's behavior in a specific election is not a "purpose... related to the electoral process" as those terms are used in Election Law Article, § 3-506(a)(1)(ii)(2), Annotated Code of Maryland.

33. Upon information and belief, prior to approximately June 2023, the SBE had never previously purported to define the statutory term "electoral process."

34. Concomitant with its adoption of the Use Restriction, the SBE also modified the pre-printed affidavit contained on the voter list request form to include an averment that the requestor will use the data only for "activities that meet the definition of 'electoral process' as defined in COMAR 33.03.02.01B(1)," and not "for investigations into an illegal or suspected illegal infractions or violations of voters' behaviors [*sic*] in a specific election."  The SBE did not, however, amend the provision of the COMAR that specifies the content of the affidavit form.

8

35. In approximately October 2023, the SBE revised the affidavit, reverting to the form in use prior to the enactment of the Use Restriction. Upon information and belief, this was done in an effort to conform the form to the unamended provision of the COMAR that specifies the content of the affidavit. But the form remains inconsistent with that provision because the SBE added an asterisk adjacent to the phrase "electoral process." The asterisk corresponds to the following statement added to the footer of the form:

> As defined in COMAR 33.03.02.01B(1) "electoral process" means the system established by the Maryland Constitution, Election Law Article, Annotated Code of Maryland, and regulations of the State Board, by which a person is elected to a public office or by which voters express a preference on a ballot question. "Electoral process" includes, but is not limited to, using data to register voters, form a political party, qualify as a candidate for public office, circulate a petition, conduct elections and recount, cast and count ballots, and finance a campaign. "Electoral process" does not include investigations into illegal or suspected illegal infractions or violations of voters' behaviors in a specific election

36. A true and correct copy of what is, upon information and belief, the current voter list request form promulgated by the SBE is attached hereto as <u>Exhibit 1</u>.

37. Each of the Plaintiffs had, prior to the SBE's adoption of the Use Restriction, periodically requested and obtained copies of Maryland voter lists.

38. Prior to the Use Restriction's adoption, both Plaintiffs used data contained in voter lists for non-commercial and unpaid volunteer activities, to include investigations of the accuracy and currency of the State's voter registration rolls.

39. In the course of conducting these investigatory activities, the Plaintiffs have contacted individual voters in an attempt to verify information contained in registration or other official election records. In a typical canvassing project, the Plaintiffs would analyze registration or voting records obtained from the SBE or a local board of election, identify potential anomalies

or inaccuracies, and contact (usually by going door-to-door and in compliance with all applicable laws) voters to cross-check the official data.

40. For example, Plaintiffs' analysis of voting records in early 2023 indicated that a relatively large number of registered voters who previously had never or only rarely voted nevertheless ostensibly cast ballots in the 2020 election. Upon being contacted by Plaintiff Sullivan during canvassing, approximately twenty individuals stated that they had not, in fact, voted in that election, a discrepancy that evidences potential inaccuracies in the State's voting records. These findings are consistent with the Maryland General Assembly's Office of Legislative Affairs audit findings. *See supra* ¶ 3.

41. In the course of conducting their investigatory canvassing activities, the Plaintiffs have never, directly or indirectly, used force, fraud, threat, menace, intimidation, bribery, reward, or offer of reward in connection with any person's registration or voting decisions or activities, and do not intend to engage in any such conduct in the future.

42. In the course of conducting their investigatory canvassing activities, the Plaintiffs have never persisted in contacting a voter who indicated that he or she did not wish to communicate with the Plaintiffs, and do not intend to do so in the future.

43. Plaintiffs have neither used voter registration records for any commercial purpose nor transferred such records to any third party for commercial uses, and do not intend to do so in the future.

44. On or around September 21, 2023, Plaintiff Morsberger submitted to the SBE a completed request for a statewide voter registration list. Before executing the request form, however, Plaintiff Morsberger crossed-out the averment in the affidavit acknowledging the Use

...
...

Restriction's prohibition on using voter registration records for investigatory purposes. The SBE refused to accept the completed request form with the interlineation.

45. On or around September 25, 2023, Plaintiff Sullivan inquired of the Baltimore County Board of Elections how to obtain a voter registration list. The Baltimore County Board of Elections responded on September 26, 2023, that Plaintiff Sullivan must submit a request form that includes an affidavit averring that she would use the registration information only for "activities that meet the definition of 'electoral process' as defined in [the Use Restriction]."

46. On September 27, 2023, the Plaintiffs, through counsel, transmitted to all the Defendants a notice letter detailing the Plaintiffs' position that the Use Restriction violates Section 8(i) of the NVRA and alerting the SBE to its procedural and substantive violations of Maryland state law. A true and correct copy of the notice letter is attached hereto as Exhibit 2.

47. Although the SBE subsequently revised the form of the affidavit in an apparent attempt to conform more closely to the underlying regulation, requestors still are required to provide a sworn statement that they will not use voter lists for any purpose that the Use Restriction prohibits. Further, even in the absence of a mandatory affidavit, any requestor who uses voter lists in a manner inconsistent with the Use Restriction's definition of "electoral process" remains subject to criminal prosecution under Md. Election Law § 3-506(c).

48. The SBE accordingly has not taken actions sufficient to remedy the Use Restriction's violation of Section 8(i) of the NVRA.

49. As a direct and proximate result of the Use Restriction, the Plaintiffs can no longer obtain new voter lists for up-to-date investigatory canvassing activities that may entail direct communication with voters because they cannot truthfully submit the required affidavit and, in any event, reasonably fear prosecution under Md. Election Law § 3-506(c) for using voter

registration lists for purposes that are not related to the "electoral process," as the term is defined in the Use Restriction.

50. If and to the extent the Use Restriction is repealed or determined by this Court not to apply to Plaintiffs' investigatory canvassing activities, Plaintiffs intend to resume requesting and obtaining voter lists for use in such activities.

## COUNT I
### Violation of Section 8(i) of the NVRA (52 U.S.C. § 20507(i))

51. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

52. Section 8(i) of the NVRA requires every State to make available to the public "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered."  52 U.S.C. § 20507(i).

53. Among Congress' purposes in enacting the NVRA, including Section 8(i), were "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. § 20501(b)(3), (b)(4).

54. When a State law or regulation "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," it is preempted.  *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 829-30 (4th Cir. 2010) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)); *see also* U.S. Const. art. VI.

55. Unlike other areas of federal law, legislation enacted pursuant to the Elections Clause of the U.S. Constitution such as the NVRA operates against state law on its own terms and

without any presumption against preemption. *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 444 (D. Md. 2019).

56. Maryland law allows individuals to use voter registration records for any non-commercial purpose that is "related to the electoral process." Md. Election Law § 3-506(a)(1)(ii).

57. The Use Restriction's express exclusion of "investigations" from its definition of the statutory term "electoral process" proscribes the use of voter lists in conducting non-commercial election-related canvassing activities, even if such communications are in furtherance of the NVRA's express purpose of ensuring the accuracy and integrity of the voter rolls.

58. By prohibiting Plaintiffs from using voter lists for any investigatory activities (including non-commercial election-related canvassing communications) concerning potential inaccuracies, errors or anomalies in Maryland's voter registration rolls, the Use Restriction obstructs the effectuation of Section 8(i) of the NVRA, and accordingly is preempted.

59. Alternatively, if and to the extent that the Use Restriction's exclusion of investigations from its definition of "electoral process" is required by or implicit in the use of that term in Md. Election Law § 3-506(a)(1)(ii)(2), that statute is preempted to the extent it prohibits Plaintiffs from using voter lists for investigatory activities (including non-commercial election-related canvassing communications) concerning potential inaccuracies, errors or anomalies in Maryland's voter registration rolls.

60. The NVRA authorizes any "aggrieved person" to bring an action for declaratory or injunctive relief to remedy a violation of the NVRA. *See* 52 U.S.C. § 20510(b).

61. As a condition precedent to initiating suit, an aggrieved person must provide "written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(a)(1). An aggrieved person is then entitled to bring a civil action in federal district court

with respect to the violation if the violation is not corrected within 90 days after receipt of the notice. *Id.* at (a)(2).

62. On September 27, 2023, and over 112 days ago, the Plaintiffs, through counsel, transmitted to all the Defendants a notice letter detailing the Plaintiffs' position that the Use Restriction violates Section 8(i) of the NVRA. *See* Exhibit 2.

63. As of the date of this Complaint, the Defendants have not responded to the notice letter nor have they corrected the NVRA violation by repealing or materially amending the Use Restriction, or otherwise curing the Use Restriction's violation of Section 8(i).

64. Accordingly, Plaintiffs are entitled to a declaration that the Use Restriction's prohibition on the use of voter lists for any non-commercial investigatory purpose is preempted by Section 8(i) of the NVRA, and an injunction prohibiting its enforcement with respect to non-commercial investigatory activities concerning potential inaccuracies, errors or anomalies in Maryland's voter registration rolls.

## COUNT II
### Violation of the First and Fourteenth Amendments (42 U.S.C. § 1983)

65. Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

66. Plaintiffs' non-commercial election-related canvassing projects—which entail direct communications with voters in the course of investigating potential inaccuracies, errors or anomalies in Maryland's voter registration rolls—are core political expressive and associational activities that are protected by the First Amendment, which the Fourteenth Amendment incorporates against state and local governments. *See generally Village of Schaumburg v. Citizens for a Better Env't.*, 444 U.S. 620, 632 (1980).

67. The Use Restriction targets the use of voter lists for non-commercial investigatory communications if the message or objective of the investigation concerns "an illegal or suspected illegal infraction or violation involving the voter's behavior in a specific election." COMAR 33.03.02.01(B)(1)(c).[2]

68. The Use Restriction's application accordingly is dependent on the viewpoint espoused by the speaker. The Use Restriction precludes a canvasser whose message or objective concerns the State's failure to identify potentially unlawful registrations from using registration records to communicate directly with voters. But the Use Restriction apparently permits voter communications by canvassers who are investigating the State's potential wrongful exclusion or removal of individuals from the voter rolls.

69. In other words, the Use Restriction apparently allows canvassers to use registration records to contact voters during the course of investigations if the canvasser's message and objective is to establish that individuals have been improperly excluded from the voter rolls. By contrast, the Use Restriction silences canvassers who espouse the opposite premise—*i.e.*, that the voter rolls might include ineligible individuals or contain other evidence of potentially unlawful registration or voting activities.

70. "In the realm of private speech or expression, government regulation may not favor one speaker over another. Discrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (citation omitted).

---

[2] It is not fully clear whether this sentence of the regulation *defines* the "investigations" that the Use Restriction prohibits or is intended as an illustrative example of a broader universe of prohibited "investigations."

71.     The Use Restriction is not narrowly tailored to advance any compelling state interest. It permits the use of registration records for unsolicited investigatory communications if the investigation's message or objective concerns the potentially improper *exclusion* of eligible individuals from the voter rolls, but it prohibits the same activity if the investigation's message or objective concerns the potentially improper *inclusion* of ineligible individuals or the existence of potentially unlawful voting activity.

72.     Plaintiffs have never used, and do not intend to use, voter lists to directly or indirectly harass, threaten, intimidate or otherwise harm any third party.

73.     In enacting and enforcing the Use Restriction, the Defendants are acting under color of state law.

74.     Accordingly, Plaintiffs are entitled to a declaration that the Use Restriction's prohibition on the use of voter lists for non-commercial canvassing if the investigation's message or objective relates to "an illegal or suspected illegal infraction or violation involving the voter's behavior in a specific election" violates the First and Fourteenth Amendments to the United States Constitution, and an injunction prohibiting its enforcement with respect to Plaintiffs' non-commercial investigatory activities concerning potential inaccuracies, errors or anomalies in Maryland's voter registration rolls.

## COUNT III
## Ultra Vires

75.     Plaintiffs incorporate by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.     This Count is brought under Maryland state law pursuant to the Court's supplemental jurisdiction granted by 28 U.S.C. § 1367.

77. Maryland law allows any person to obtain and use voter lists for any non-commercial "purpose . . . related to the electoral process." Md. Election Law § 3-506(a)(1)(ii).

78. The SBE may, in consultation with local boards of election, adopt regulations governing certain aspects of the process of requesting and obtaining voter lists—namely: (a) the time in which a list must be provided, (b) required authorizations that must precede issuance of a list, (c) fees to be paid by requestors, (d) the types of information to be included on a list, (e) restrictions on the release of certain registrants' residential addresses, (f) the format of information included in a list, and (g) the medium or media on which list information is provided. *See* Md. Election Law § 3-506(a)(2).

79. This statutory grant of authority does not include a power to independently define or interpret the term "electoral process." *See* Md. Election Law § 3-506(a)(2).

80. To the extent it purports to define or interpret the term "electoral process," the Use Restriction exceeds and is inconsistent with the statutory authority conferred on the SBE by Md. Election Law § 3-506(a)(2).

81. In addition, non-commercial election-related investigatory activities relating to potential inaccuracies, errors or anomalies in Maryland's voter registration rolls are, as a matter of law, for a "purpose . . . related to the electoral process," within the meaning of Md. Election Law § 3-506(a)(1)(ii)(2).

82. Even if the SBE possesses statutory authority to define or interpret the term "electoral process," the denotation contained in the Use Restriction is inconsistent with, and violative of, Md. Election Law § 3-506(a)(1)(ii)(2) to the extent it excludes non-commercial election-related investigations concerning potential inaccuracies, errors, or anomalies in Maryland's voter registration rolls.

83. In enacting and enforcing the Use Restriction regulation, the SBE has acted arbitrarily, unreasonably, and beyond its statutory authority granted by the Maryland General Assembly. The Use Restriction is thus contrary to law and exceeds the SBE's authority within the meaning of the Maryland State Administrative Procedure Act, Md. State Govt § 10-125.

84. There is a live and justiciable controversy between the parties concerning whether the Use Restriction is a valid and lawful exercise of the SBE's statutory authority.

85. Accordingly, Plaintiffs are entitled to a declaration that the Use Restriction is invalid under Maryland law, as well as an injunction prohibiting its enforcement, to the extent it excludes from its definition of the term "electoral process" investigations concerning potential inaccuracies, errors or anomalies in Maryland's voter registration rolls.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request relief in the following forms:

A. A declaration pursuant to 28 U.S.C. § 2201 and other applicable law that, to the extent it prohibits Plaintiffs from using voter lists for non-commercial investigatory activities (including but not limited to canvassing) concerning potential inaccuracies, errors, or anomalies in Maryland's voter registration rolls, the Use Restriction is (1) preempted by Section 8(i) of the NVRA, (2) violative of the First and Fourteenth Amendments to the United States Constitution, and/or (3) not authorized by, preempted by, or is inconsistent with, Md. Election Law § 3-506 and violative of Md. State Govt § 10-125;

B. An injunction pursuant to Fed. R. Civ. P. 65 and other applicable law prohibiting enforcement of the Use Restriction against Plaintiffs to the extent Plaintiffs use voter lists for non-commercial investigatory activities (including but not limited to canvassing)

concerning potential inaccuracies, errors or anomalies in Maryland's voter registration rolls;

C. An award of reasonable attorneys' fees and costs pursuant to 52 U.S.C. § 20510(c), 42 U.S.C. § 1988, and other applicable law; and

D. Such other relief as the Court deems necessary, equitable, proper, or just.

DATED this 18th day of January, 2024.

/s/J. Justin Riemer
J. Justin Riemer (No. 30943)
RIEMER LAW LLC
1125 West Street, Suite 200
Annapolis, MD 21401
Tel: (443) 266-2937
justin@riemer.law

Kory Langhofer (Ariz. Bar No. 024722)*
Thomas Basile (Ariz. Bar No. 031150)*
STATECRAFT PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003
Tel: (602) 382-4078
kory@statecraftlaw.com
tom@statecraftlaw.com
*Applications for admission *pro hac vice* forthcoming