# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **KATHERINE STRAUCH SULLIVAN,** *et al.*, | * * * * | |
| **Plaintiffs,** | * * | |
| v. | * * * | Civ. No. MJM-24-172 |
| **MICHAEL G. SUMMERS,** *et al.*, | * * * | |
| **Defendants.** | * * | |

\* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Katherine Strauch Sullivan and David Morsberger (collectively, "Plaintiffs") commenced this civil action against members of the Maryland State Board of Elections in their official capacities ("Defendants"), alleging that a regulation adopted by SBE violates, and is preempted by, Section 8(i) of the National Voter Registration Act ("NVRA") (Count I); violates the First and Fourteenth Amendments to the United States Constitution (Count II); and is an invalid exercise of the SBE's statutory authority (Count III). ECF No. 1 (Complaint). Currently pending are Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF No. 19, and Plaintiffs' Motion for Partial Summary Judgment, ECF No. 32. The motions are fully briefed. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). As explained below, Defendants' motion will be denied in part and Plaintiffs' motion will be granted in part because a provision of the challenged regulation restricting the use of the voter registration list, including voting history, is preempted by the NVRA.

1

I.      FACTUAL BACKGROUND

Plaintiffs are registered voters in Maryland who share concerns about the integrity of past elections that have been certified in the State of Maryland. ECF No. 31, ¶¶ 1–3 (Joint Stipulation of Facts). Each Plaintiff has, at previous times, requested and received registered voter lists from the Maryland State Board of Elections ("SBE"). *Id.* ¶¶ 1–2, 4. They have acted on their concerns about election integrity by examining the voter lists, collecting information through canvassing, presenting their findings to state and local officials, and pursuing litigation. *Id.* ¶ 3.

MDVOTERS is a registered voter database maintained by SBE. *Id.* ¶ 6. A registered voter list details whether a voter is active or inactive at the time the list is exported from MDVOTERS. *Id.* ¶ 9. A voting history compiles information on when and the means by which a registered voter participated in elections in Maryland, going back to 2006. *Id.* ¶¶ 7, 8.

A voter requesting access to the voter registration list, including voting history, must provide a signed and sworn statement that the list is not intended for commercial solicitation or any other purpose "not related to the electoral process." Md. Code, Elec. Law § 3-506(a)(1)(ii). A person who knowingly allows a voter list under her control "to be used for any purpose not related to the electoral process is guilty of a misdemeanor." Md. Code, Elec. Law § 3-506(c).

As they have done in the past, Plaintiffs anticipate using the registered voter list from the SBE and voting histories for registered voters to conduct statewide investigative canvasses to identify and analyze what they believe are potential errors, irregularities, or anomalies within MDVOTERS. *Id.* ¶ 11. In the past, their canvassing activities have resulted in findings they believe to constitute evidence or indications of infractions or violations of election-related laws and regulations, "whether by the voter, a government official, or a third party." *Id.* ¶ 12; *see also* ECF No. 31-1 at 2–3 (Restoring Faith in Maryland Elections). Plaintiffs last conducted an investigative

canvass between September and November 2023 using the registered voter list to contact individual voters, establish their willingness to answer questions, and then asking each voter to confirm their voting history record. ECF No. 31, ¶¶ 27, 28, 32.

On or around June 2023, the SBE adopted a regulation restricting the use of voter registration lists by Maryland voters who request them. Md. Code Regs. ("COMAR") 33.03.02.01.B(1). Specifically, the regulation purports to exclude "investigations" from the definition of "electoral process" as that term is used in Md. Code, Elec. Law § 3-506(a)(1)(ii), such that Maryland voters are not permitted to obtain the voter registration list for the purpose of "investigations." *Id.* at 33.03.02.01.B(1)(c). Specifically, "[t]he use of a voter registration list to contact an individual voter as part of an investigation into an illegal or suspected illegal infraction or violation involving the voter's behavior in a specific election" is not a permissible "purpose . . . related to the electoral process" under § 3-506(a)(1)(ii)(2). *Id.* In accordance with this restriction on the use of requested voter registration lists (hereinafter, "Use Restriction"), SBE now requires persons who request registered voter lists to execute a sworn affidavit agreeing not to use the information to conduct such investigations. ECF No. 31, ¶ 13.

In September 2023, Mr. Morsberger attempted to request a registered voter list, including a voter history file, by submitting a completed request form. *Id.* ¶¶ 18, 19; ECF No. 19-2 (Application for Voter Registration Data). He struck language on the form that required his agreement not to use the requested information "for investigations into an illegal or suspected illegal infractions or violations of voters' behaviors in a specific election." *Id.*; *see also* ECF No. 31, ¶ 20. His request was denied. *Id.* ¶ 21.

Ms. Sullivan made an inquiry to staff of the Baltimore County Board of Elections as to whether she could obtain a registered voter list using the form affidavit that was in use before the

3

Use Restriction. *Id.* ¶ 22. She was told that she would be required to sign the affidavit created after imposition of the Use Restriction in order to obtain a copy of the voter list. *Id.* She took no further steps to obtain a list. *Id.*

## II.   PROCEDURAL HISTORY

On January 18, 2024, Plaintiffs filed a Complaint asserting claims against Michael G. Summers, William G. Voelp, Janet Millenson, Yaakov Weissmann, and Jared DeMarinis (collectively, "Defendants") in their official capacities as members of the Maryland State Board of Elections in three counts: (I) Violation of Section 8(i) of the NVRA; (II) Violation of the First and Fourteenth Amendments (42 U.S.C. § 1983); and (III) Ultra Vires under Maryland law. ECF No. 1. On March 8, 2024, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. ECF No. 19. Plaintiffs filed a response in opposition to the motion, ECF No. 22, and Defendants filed a reply, ECF No. 29. Amicus Judicial Watch, Inc. filed a brief in support of Plaintiffs with a motion seeking leave to file, ECF Nos. 25, 27, which was granted, ECF No. 26. On August 30, 2024, the parties filed a Joint Stipulation of Facts, ECF No. 31, and Plaintiffs filed a Motion for Partial Summary Judgment as to Counts I and II, ECF No. 32. Defendants filed a response in opposition to Plaintiffs' motion, ECF No. 33, and Plaintiffs filed a reply, ECF No. 34. Each party filed a brief supplement in support of their respective positions in October 2024, ECF Nos. 35, 36.

## III.   STANDARD OF REVIEW

The parties agree that the facts to the issues raised in their motions are not in dispute, and each party requests summary judgment in their favor. *See* ECF No. 32-1 at 1; ECF No. 33 at 6. A court may grant a party's summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure if "the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). The Court will therefore treat Defendants' motion as one for summary judgment.

IV.     **DISCUSSION**

In Count I of the Complaint, Plaintiffs claim that the Use Restriction in COMAR 33.03.02.01.B(3) is preempted by Section 8(i) of the NVRA. The parties dispute whether the Use Restriction stands as an obstacle to accomplishment and execution of the NVRA's objectives and purposes such that it is preempted by the NVRA. As further explained below, the Court finds that the Use Restriction is preempted for presenting such an obstacle and, therefore, will grant summary judgment in Plaintiffs' favor as to Count I.

   A.   **Applicable Federal and State Law**

The National Voter Registration Act of 1993 ("NVRA") was enacted to "enhance[] the participation of eligible citizens as voters in elections for Federal office;" "to protect the integrity of the electoral process;" and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b). In furtherance of these purposes, Section 8(i) of the NVRA generally requires states to make available for public disclosure "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." *Id.* § 20507(i)(1).

The Help America Vote Act of 2002 requires states to "implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State . . . ." *Id.* § 21083(a)(1)(A). A state election system is required to "include provisions to ensure that voter

5

registration records in the State are accurate and are updated regularly . . . ." *Id.* § 21083(a)(4). These provisions must include

> A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters. Under such system, consistent with the [NVRA], registrants who have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office shall be removed from the official list of eligible voters, except that no registrant may be removed solely by reason of a failure to vote.

*Id.* § 21083(a)(4)(A). The election system must also have "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." Id. § 21083(a)(4)(B). Appropriate state and local election officials are required to "perform list maintenance with respect to the computerized list on a regular basis . . . ." *Id.* § 21083(a)(2)(A).

Consistent with federal law, Maryland law requires maintenance of "a statewide voter registration list." Md. Code, Elec. Law § 3-101(a). The voter registration list is required to include, among other information, "voting history information on a current basis for a period covering at least the 5 preceding years." *Id.* § 3-101(b)(6). MDVOTERS is Maryland's statewide database of registered voters. ECF No. 31, ¶ 5 (Joint Stip.).

A voter is placed on inactive status if she or he fails to respond to a confirmation notice that is sent when it appears that she or he has moved out of state. Md. Code, Elec. Law §§ 3-502(c), 3-503(a). "An inactive voter who fails to vote in an election in the period ending with the second general election shall be removed from the statewide voter registration list. *Id.* § 3-503(c).

Maryland law requires "[a] copy of a list of registered voters [to] be provided" upon submission of "a written application[]" and "a statement, signed under oath, that the list is not intended to be used for: [1] A commercial solicitation; or [2] any other purpose not related to the electoral process." *Id.* § 3-506(a)(1). The SBE is authorized to adopt regulations specifying, among

6

other things, "the authorization to be required for providing a list; . . . the information to be included on a list; [and] the format of the information[.]" *Id.* § 3-506(a)(2).

In June 2023, the SBE adopted a regulation purporting to define "electoral process" as follows:

> (a) "Electoral process" means the system established by the Maryland Constitution, Election Law Article, Annotated Code of Maryland, and regulations of the State Board, by which a person is elected to a public office or by which voters express a preference on a ballot question.
>
> (b) "Electoral process" includes, but is not limited to registering voters, forming political parties, qualifying as a candidate for public office, petitioning candidates or questions to the ballot, drafting and publishing ballot questions, conducting elections, casting ballots, canvassing ballots, recounting an election, and financing a campaign.
>
> (c) "Electoral process" does not include investigations. The use of a voter registration list to contact an individual voter as part of an investigation into an illegal or suspected illegal infraction or violation involving the voter's behavior in a specific election is not a "purpose... related to the electoral process" as those terms are used in Election Law Article, § 3-506(a)(1)(ii)(2), Annotated Code of Maryland.

COMAR 33.03.02.01.B(3).

**B. Preemption**

The Court finds the Use Restriction in COMAR 33.03.02.01.B(3) to be preempted by federal law because it conflicts with federal law by presenting an obstacle to accomplishing and executing the NVRA's purposes and objectives.

The Supremacy Clause in Article VI of the U.S. Constitution provides that federal law "shall be the supreme Law of the Land" notwithstanding any contrary law of any state. U.S. Const., Art. VI, cl. 2. Congress may preempt—that is to say, invalidate—a state law through federal legislation. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). It may do so through express

7

language in a statute or by implication, either through "field" preemption or "conflict" preemption. *Id.* Conflict preemption may occur where "compliance with both state and federal law is impossible," or where "the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015) (quoting *California v. ARC America Corp.,* 490 U.S. 93, 100, 101 (1989)). The latter form of conflict preemption—"obstacle" preemption—"occurs where state law 'interferes with the *methods* by which the federal statute was designed to reach [its] goal.'" *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 830 (4th Cir. 2010) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n,* 505 U.S. 88, 103 (1992)). In determining whether a challenged state law is preempted as an obstacle to the purposes and objectives of federal legislation, the court must "independently . . . consider national interests and their putative conflict with state interests." *Abbot v. Am. Cyanamid Co.*, 844 F.2d 1108, 1113 (4th Cir. 1988). In general, a court must presume that Congress did not intend to preempt state law without expressly stating its intent. *Abbot,* 844 F.2d at 1112. But that assumption "does not hold" when Congress acts pursuant to its authority under the Elections Clause, which specifically "empowers Congress to 'make or alter' state election regulations." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14, (2013) (quoting U.S. Const., Art. I, § 4, cl. 1). "The purpose of Congress is the ultimate touchstone" of preemption analysis. *Malone v. White Motor Corp.,* 435 U.S. 497, 504 (1978) (quoting *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103 (1963)).

In *Judicial Watch, Inc. v. Lamone*, Judge Hollander concluded that a provision in § 3-506(a) of Maryland's Election Law Article limiting disclosure of voter registration lists to Maryland registered voters was preempted by the NVRA. 399 F. Supp. 3d 425, 445 (D. Md. 2019). First, the court considered whether the voter registrations at issue were records covered by the

disclosure requirement in Section 8(i) of the NVRA. *Id.* at 439. The court found that, for purposes of Section 8(i), "[t]he process of creating, updating, and auditing registrations 'is a "program" . . . because it is carried out in the service of a specified end—maintenance of voter rolls—and it is an "activity" because it is a particular task . . . of [Maryland] election employees.'" *Id.* (quoting *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012).

> In Maryland, State and local officials rely on voter registrations to register new voters and to remove ineligible voters, thereby " 'ensuring the accuracy and currency of official lists of eligible voters.' " *Long*, 682 F.3d at 335 (internal citation omitted). And, the voter registrations are clearly records that concern the implementation of the program and activity of maintaining accurate and current eligible voter lists. After all, they contain the information on which Maryland election officials rely to monitor, track, and determine voter eligibility. *See id.* at 336.

*Lamone*, 399 F. Supp. 3d at 439. Upon examination of the NVRA's statutory purposes set forth in 52 U.S.C. § 20501(b) and the Fourth Circuit's decision in *Long*, the court recognized that "Section 8(i) of the NVRA provides for the disclosure of voter registrations in order to 'assist the identification of both error and fraud in the preparation and maintenance of voter rolls.'" *Id.* at 445 (quoting *Long*, 682 F.3d at 339). The Court finally determined that the restriction in Elec. Law § 3-506(a) "does not advance a valid state interest" because any Maryland voter could obtain a voter list and share it with others, like the plaintiff organizations, who were not Maryland registered voters. *Id.* at 445. By excluding the plaintiff organizations from access to voter registration lists through direct requests to state and local election officials, Elec. Law § 3-506(a) was an obstacle to the accomplishment of the NVRA's purposes and was therefore "preempted in so far as it allows only Maryland registered voters to access voter registration lists." *Id.* (footnote omitted).

More recently, in *Public Interest Legal Foundation, Inc. v. Bellows*, the U.S. Court of Appeals for the First Circuit held that the NVRA preempted provisions in a Maine statute that prohibited certain uses and publication of a "Voter File" obtained to "evaluat[e] the State's

9

compliance with its voter list maintenance obligations." 92 F.4th 36, 43 (1st Cir. 2024) (quoting Me. Rev. Stat. Ann. tit. 21-A, § 196-A(1)(J)). The challenged "Use Ban" prohibited "[s]ell[ing], transfer[ring] to another person or us[ing]" the Voter File "for any purpose that is not directly related to evaluating [Maine's] compliance with its voter list maintenance obligations." *Id.* at 43–44 (quoting Me. Rev. Stat. Ann. tit. 21-A, § 196-A(1)(J)(1)-(2)).

The *Bellows* court first identified "creat[ing] and updat[ing] voter registration records" as "activities" that "fall within" the disclosure requirement in Section 8(i) of the NVRA. *Id.* at 46. These activities include "removing ineligible voters from [Maine's Central Voter Registration system,]" noting that this activity is "conducted to ensure that Maine is keeping an accurate and current account of its official lists of eligible voters as those voters move, die, or otherwise change their personal information." *Id.* Because the Voter File "contains the voter registration information necessary to examine whether Maine and other states are properly evaluating applicants and registering voters," the court concluded that it was a record concerning implementation of Maine's voter list registration and maintenance activities and therefore subject to Section 8(i)'s disclosure requirement. *Id.* at 49.

The court in *Bellows* continued, "the plain language of the Use Ban would prohibit [plaintiff] 'from using the Voter File to evaluate *another* state's compliance with its voter list maintenance obligations' or from 'using the Voter file to enforce the NVRA when the basis for such action was the evaluation (via Maine's Voter File) of *another* state's voter list maintenance obligations.'" *Id.* at 54. These restrictions were preempted by the NVRA because Congress intended for the NVRA's purposes "to be fulfilled throughout every state[,]" to include protecting the integrity of the electoral process and ensuring accuracy and currency in voter registration rolls.

*Id.* The Use Ban, thus, "'stands as an obstacle to the accomplishment and execution' of these purposes." *Id.* (citation omitted).

This Court finds *Lamone* and *Bellows* to be persuasive and that the Use Restriction in challenged in the instant case is preempted by the NVRA's Section 8(i).

First, Maryland's voter registration list, including voting history files, are records that fall within the scope of Section 8(i). As recognized in *Lamone* and *Bellows*, the process of "creat[ing] and updat[ing] voter registration records" is a program and activity, *Bellows*, 399 F. Supp. 3d at 46, "because it is carried out in the service of a specified end—maintenance of voter rolls—and . . . it is a particular task . . . of [Maryland] election employees[,]" *Lamone*, 399 F. Supp. 3d at 439 (quoting *Long*, 682 F.3d at 335) (internal quotation marks omitted). This program and activity includes "list maintenance" functions that state and local election officials are required to perform by both federal and state law. 52 U.S.C. § 21083(a)(2)(A); *see also* Md. Code, Elec. Law §§ 3-502(c), 3-503(a),(c). In Maryland, list maintenance involves removal of voters in "inactive status" "who fail[] to vote in an election in the period ending with the second general election." *Id.* This activity and the more general updating of voter registration lists are both "plainly 'conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[]'" because they are geared toward "keep[ing] official voter lists both 'accurate'—free from error—and 'current'—most recent." *Long*, 682 F.3d at 335 (quoting Section 8(i), now codified in 52 U.S.C. § 20507(i)).

Maryland's voter registration list, including voting history files, are "records concerning the implementation of" this program and activity. 52 U.S.C. § 20507(i)(1). Defendants emphasize a distinction between voting histories and other information reflected in Maryland voter registration lists, arguing that voting histories are not subject to the NVRA's disclosure

11

requirement. *See* ECF No. 19-1 at 17–20; ECF No. 33 at 8–12. But a voting history contains information regarding a registered voter's participation in past elections, ECF No. 31, ¶¶ 7, 8, and therefore speaks to whether particular voters are subject to removal from the voter registration list pursuant to Md. Code, Elec. Law § 3-503(c). Voting history files, thus, "concern[] the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1); *see also Bellows*, 92 F.4th at 47 ("[T]he term 'concerning' used 'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters *relating to* that subject.'") (quoting *Patel v. Garland*, 596 U.S. 328, 339 (2022)). Section 8(i)'s provision that "all" such records are subject to disclosure naturally brings voting history files within its scope. 52 U.S.C. § 20507(i)(1); *see also Long*, 682 F.3d at 336 ("[T]he use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth.") (quoting *Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen*, 152 F.3d 283, 290 (4th Cir.1998) (internal quotation marks omitted).[1]

Second, the Use Restriction in COMAR 33.03.02.01.B(3) "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the NVRA. *Oneok*, 575 U.S. at 377. Plaintiffs intend to use registered voter lists, including voter histories, for "a statewide investigative canvass to identify and analyze what they believe may be potential errors, irregularities, or anomalies within MDVOTERS" that have "impacted or could impact" future elections in Maryland. ECF No. 31, ¶ 11. Their canvassing work in the past has resulted in findings

---

[1] This Court is not the first to find voting history records to fall within the ambit of Section 8(i). *See Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 940–41 (C.D. Ill. 2022); *Pub. Int. Legal Found. v. Chapman*, 595 F. Supp. 3d 296, 301, 306 (M.D. Pa. 2022); *Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014, 1217–18, 1222 (D.N.M. 2024).

of both potential inaccuracies in the lists of registered voters, including registration errors and errors with respect to active/inactive statuses assigned to particular voters, ECF No. 31-1 at 2–3, although SBE disputes these findings, ECF No. 31, ¶ 25. Plaintiffs' anticipated use of the information they seek may include "investigation into an illegal or suspected illegal infraction or violation involving the voter's behavior in a specific election[,]" which the Use Restriction forbids. COMAR 33.03.02.01.B(3)(c). But it also likely includes investigation into the accuracy and currency of voter registration rolls and "the integrity of the electoral process" in Maryland, which are core purposes of the NVRA. 52 U.S.C. § 20501(b).

The Court finds it to be impracticable to disaggregate these two objectives in a way that adequately protects the purposes and objectives of the NVRA. Under the Use Restriction, if a person uses voter histories to assist in checking the registered voter list's accuracy and currency while at the same time identifying specific infractions and violations in past elections, that person may be subjecting themselves to criminal liability. *See* Md. Code, Elec. Law § 3-506(c). The Use Restriction, thus, presents a clear and substantial risk of chilling or deterring individuals from seeking to access information subject to disclosure under the NVRA when the individual expects to identify past infractions as part of a broader effort to identify "error and fraud in the preparation and maintenance of voter rolls.'" *Lamone*, 399 F. Supp. 3d at 445 (quoting *Long*, 682 F.3d at 339). What legitimate interests the State of Maryland has in the Use Restriction—*i.e.*, preventing voter harassment—may satisfied by state laws against harassment and trespass.[2]

In sum, the Court concludes as a matter of law that the Use Restriction in COMAR 33.03.02.01.B(3) presents an obstacle to accomplishing and executing the purposes and objectives

---

[2] The Court notes that Plaintiffs' canvassing efforts involve establishing the willingness of each voter to answer questions before the voter confirms their voting history. ECF No. 31 at 28.

of the NVRA and is, therefore, preempted. Accordingly, summary judgment shall be entered in favor of Plaintiffs on Count I of the Complaint.[3]

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be denied, and Plaintiffs' Motion for Partial Summary Judgment will be granted in part. A separate Order follows.

3/4/25
Date

Matthew J. Maddox
United States District Judge

---

[3] There are two remaining counts in Plaintiffs' Complaint. In Count II of the Complaint, Plaintiffs challenge the Use Restriction as a violation of the First and Fourteenth Amendments. ECF No. 1, ¶¶ 65–74. In Count III, Plaintiffs assert that COMAR 33.03.02.01.B(3) is invalid because the SBE exceeded its statutory authority in the enactment of this regulation. *Id.* ¶¶ 75–85. Defendants seek summary judgment on all three counts. ECF No. 19. In their motion, Plaintiffs seek summary judgment on Count II, ECF No. 32-1 at 12, but state that "[s]ummary judgment in Plaintiffs' favor on either [Count I or II] likely moots the remaining claim[,]" ECF No. 32-1 at 1 n.1. The same may be true of Count III. Therefore, the Court declines to reach the merits of Counts II and III.